PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 5:23-CR-66 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| HOWARD A. BURRIS, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF No. 20] |
| | ) | |

Pending before the Court is Defendant Howard A. Burris's Motion to Suppress (ECF No. 20). The Government filed a Response (ECF No. 24). The Court, having considered the parties' filings and applicable law, as well as the evidence and argument presented at the evidentiary hearing held on January 11, 2024, grants Defendant's motion.

### I. Factual Background

On December 11, 2022, Akron Police Officers Trimble and Sember received a report of a verbal altercation at 602 Lakewood Boulevard, Akron, Ohio, Defendant's residence (the "Residence"). ECF No. 20 at PageID #: 84. Several houses down from the Residence, the officers, while still inside their patrol car, spoke to alleged victim, A.M. *See* Body Camera Footage: Officer Sember at 0:30. A.M. explained that she and Defendant had argued about paying rent. *See id*. The same officers then traveled to the Residence outside of which Defendant's girlfriend was sitting in the passenger seat of a truck parked on the street with the door open. *See* Body Camera Footage: Officer Trimble at 3:22. Defendant was standing, on the opposite side, on a landing atop the first set of steps on the path leading up to his house. *See id*.

(5:23-CR-66)

As Officer Trimble approached the pair, he asked Defendant's girlfriend, "How you doing Ma'am." *See id.* at 3:29. He then turned his attention to Defendant and asked, "What's up, Bro?" *See id.* at 3:33. Officer Trimble continued, "Hey, listen, I don't care if you do but if you got a … gun on you just—" *See id*. at 3:36. Defendant's girlfriend quickly interjected "Oh no, he don't got no gun." *See id.* at 3:40. Officer Trimble continued, saying, "I'm just telling you, Bro, like I don't want no weird interaction." *See id*. at 3:41. Defendant made an unintelligible comment, turned and began walking up the remaining steps towards his house.[1] *See id.* at 3:48.

As Defendant was walking away, Officer Trimble began walking towards the first set of steps. *See* Body Camera Footage: Officer Trimble at 3:51. While walking, Officer Trimble said, "Hey, let me get your side of the story, Man!" *See id*. Before Officer Trimble made it to the first set of steps, Defendant had approached the second, shorter set of steps, almost to his porch. *See* Body Camera Footage: Officer Sember at 0:30. As Defendant continued to walk towards his front door, Officer Trimble (now joined by Officer Sember) continued towards the bottom of the first flight of steps. *See id*. at 4:20. Officer Trimble then climbed the steps. *See id*. During the suppression hearing, Officer Trimble testified that Defendant looked back, saw him on the steps, and started to sprint, so he ran after Defendant. About halfway up the steps Officer Trimble said, "Dude, don't." *See* Body Camera Footage: Officer Trimble at 4:02.

Officer Trimble eventually reached the top of the first set of steps and continued towards the house. *See id*. at 4:04. Right before approaching the porch steps, Officer Trimble shouted,

---

[1] The Government claims Defendant said "Yeah, I ain't doing shit." ECF No. 24 at PageID #: 141. At the evidentiary hearing, Defense counsel claimed Defendant said, "I don't have shit."

2

(5:23-CR-66)

"I'm going to tase you, Bro." *See id*. at 4:07.  When Officer Trimble yelled this, he was in motion, so the footage from his camera is not the clearest, but Defendant had already made it inside his home and had shut the interior front door[2] behind him.  Officer Trimble reached the closed front door.  *See id.* at 4:17.  After applying some force to the door, Officer Trimble stumbled into the house and chased Defendant up an interior set of stairs.  *See id*.  As Defendant ran up the stairs with Officer Trimble behind him, a gun is seen on the landing.  *See id*. at 4:20.  Defendant was subsequently arrested.

A grand jury returned a three-count indictment that included one count of being a felon in possession, in violation of 18 U.S.C. § 922(g)(1), arising from the above described encounter, and two counts of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), arising from an earlier unrelated incident.[3]  ECF No. 1 at PageID #: 1-2.

## II. Standard of Review

"The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'"  *Lange v. California,* 141 S. Ct. 2011, 2017 (2021).  An individual retains the right to "retreat into his home and be free from unreasonable governmental intrusion." *United States v. Saari,* 272 F.3d 804, 812 (6th Cir. 2001).  "Under the Fourth Amendment, searches 'conducted without a warrant issued upon probable cause [are] *per se* unreasonable … subject only to a few specifically established and well-delineated exceptions."  United States v. Moon, 513 F.3d 527,

---

[2] Defendant's home had both a screen and interior front door.
[3] The controlled substance offenses arose from an incident on or about November 17, 2022, and the firearm offense arose from the incident on December 11, 2022.  ECF No. 1 at PageID #: 1-2.

3

(5:23-CR-66)

537 (6th Cir. 2008) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). These exceptions or exigent circumstances rely on the existence of an emergency situation requiring urgent police attention. *United States v. Radka*, 904 F.2d 357, 361 (6th Cir. 1990). Exigent circumstances justifying a search or entry without a warrant include (1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, or (4) a risk of danger to the police or others. *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (citing *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994)).

Acknowledging that the officers had no warrant, the Government leans on the "hot pursuit of a fleeing felon" exception. ECF No. 24 at PageID #: 143. The hot pursuit exception allows officers "to enter a home to apprehend a felony suspect who flees from an attempted arrest in a public place." *Grant v. Wilson*, No. 21-5642, 2022 WL 3500190, at *6 (6th Cir. Aug. 18, 2022) (citing *United States v. Santana*, 427 U.S. 38, 43 (1976)). For the hot pursuit exception to apply, there must be a "pursuit," meaning an officer begins to arrest a suspect in a public place and the suspect flees, and the flight must be "hot," such that the emergency nature of the situation requires immediate police attention. *Smith v. Stoneburner*, 716 F.3d 926, 931 (6th Cir. 2013).

### III. Analysis

1. **Defendant was in a Public Place**

Defendant first argued that a "hot pursuit" never occurred because he never interacted with police in a public space. ECF No. 20 at PageID #: 87. During the suppression hearing, however, Defendant conceded that he was in a public place when the encounter first began. The Court agrees. Because Defendant, who was standing on the steps in his front yard, had "fully exposed himself to the public view," Defendant was in a public place when he first interacted

4

(5:23-CR-66)

with law enforcement. *See Cummings v. City of Akron*, 418 F.3d 676, 686 (6th Cir. 2005). Accordingly, hot pursuit was possible.

  2. **No Pursuit Occurred**

While Defendant was in a public place, the question remains whether a hot pursuit occurred. The Sixth Circuit has emphasized that the "'pursuit' begins when police start to arrest a suspect in a public place." *Grant v. Wilson*, No. 21-5642, 2022 WL 3500190, at *6 (6th Cir. Aug. 18, 2022) (citing *Smith v. Stoneburner*, 716 F.3d 926, 931 (6th Cir. 2013)). The Sixth Circuit has held that electing to end a voluntary conversation with an officer does not trigger the hot pursuit exception. *Smith v. Stoneburner*, 716 F.3d 926, 931 (6th Cir. 2013). In *Stoneburner*, the plaintiff voluntarily agreed to talk with the officer, and as the Sixth Circuit carefully noted, at no time did the officer attempt to arrest the plaintiff while they spoke. *Id.* When the plaintiff in *Stoneburner* attempted to end the conversation by returning into his house and the police followed, the hot pursuit exception did not apply. *Id.* "To call that choice 'flight' would make a fugitive out of any citizen who exercises his right to end a voluntary conversation with a police officer." *Id.* The Sixth Circuit continued to explain that had the officer told plaintiff he was under arrest or something similar before plaintiff ran, that might have made a difference. *Id.* Because an arrest had not been initiated, however, the plaintiff in *Stoneburner* was able to decline questioning and was free to leave. *Id.*; *see also Brenay v. Schartow*, 709 F. App'x 331, 335 (6th Cir. 2017) (explaining "unless and until [the officer] initiated an arrest, [plaintiffs] were free to shut the door and walk away").

The Government retorts that the officers had probable cause to arrest Defendant. Even if there were probable cause, an arrest must have been initiated to trigger a hot pursuit. In *Stoneburner*, officers "had probable cause to believe [Plaintiff] had committed" the crime, yet

5

(5:23-CR-66)

the hot pursuit exception still did not justify entry because the entry was neither "hot" nor was there a "pursuit." *Smith*, 716 F.3d at 931.

As earlier indicated, Officer Trimble first approached Defendant asking him "what was up." *See* Body Camera Footage: Officer Trimble at 3:33. During their interactions, Officer Trimble addressed Defendant as "Bro," "Man," and "Dude," all colloquial, conversational terms. *See id*. at 3:33, 3:41, 3:51. Defendant exercised his right to end the conversation with the officer when he turned and walked away from Officer Trimble. When Defendant elected to end the interaction, Officer Trimble did not announce an arrest. Instead, Officer Trimble, rather conversationally, told Defendant he wanted his "side of the story" and kept walking towards Defendant. *See* Body Camera Footage: Officer Trimble at 3:51.

When Defendant started "sprinting,"[4] Defendant had not been given notice that he was not free to leave. As Officer Trimble ran after Defendant, he failed to make any definitive statement initiating arrest. He only said "stop" after Defendant had retreated into his home. Prior to the men running, Officer Trimble had not made it clear that Defendant was subject to arrest. This is best exemplified by Officer Trimble's testimony that his intention was to *detain* Defendant once he caught up to him. Officer Trimble did not testify he would have arrested Defendant.

The Sixth Circuit has declined to "apply the hot pursuit exception even when plaintiffs had face-to-face encounters with the police and then retreated into their home." *Grant v.*

---

[4] The body camera footage is unclear as to whom sped up their pace first, but Officer Trimble testified at the suppression hearing that he "started to walk towards [Defendant] first, and then [Defendant] kind of glanced back and saw that [he] was on the steps and [Defendant] started to sprint. So obviously [Officer Trimble explained, he] started to run too."

6

(5:23-CR-66)

*Wilson*, No. 21-5642, 2022 WL 3500190, at *6 (6th Cir. Aug. 18, 2022). Ultimately, without operative words indicating or circumstances justifying an arrest, Defendant was free to leave, and that includes leaving in a hurried manner. *See Brenay v. Schartow*, 709 F. App'x 331, 335 (6th Cir. 2017) (explaining the hot pursuit doctrine did not apply because the suspect "ended his interaction with the police [and retreated into his house] before [the] Officer told him he was under arrest").

3. **Lack of Emergency Circumstance**

This situation lacked an emergency justifying the warrantless entry into Defendant's home. The nature of a situation turns "hot" when there is a need for immediate police action to apprehend a suspect. *Cummings v. City of Akron*, 418 F.3d 676, 686 (6th Cir. 2005). While the officers may have believed Defendant was armed, from the information known to them when they followed Defendant into his home, they also understood that there were no other people inside. The alleged victim was secure outside of the home, and during their initial onsite discussion, she told the officers that her son had been taken away by her sister. *See, e.g., Grant v. Wilson,* No. 21-5642, 2022 WL 3500190, at *7 (6th Cir. Aug. 18, 2022) (explaining the situation was "lukewarm, not hot" because the victim of the alleged crime was safe and the suspect was not armed). In *Grant*, the Sixth Circuit "held the hot pursuit exception did not apply in [even] more extreme situations, such as when the police conducted a warrantless entry to apprehend a known gunman who barricaded himself inside his home." *Id.* (citing *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 997 (6th Cir. 1994)).

In summary, by the time Defendant had retreated into his home, the officers knew his identity and location, and even if he were armed, they had no reason to believe anyone else was

7

(5:23-CR-66)

inside the home.  The proper course of action would have been to obtain a warrant.[5]  *See Baillargeon v. Huber*, No. 1:21-CV-886, 2023 WL 4144733, at *8 (W.D. Mich. June 23, 2023) (holding no emergency situation existed because Police knew the suspect's identity and could have gotten a warrant).  Accordingly, no emergency justified warrantless entry into Defendant's home.

### IV.    Conclusion

For the foregoing reasons, Defendant's Motion to Suppress (ECF No. 20) is granted.  Accordingly, evidence that was discovered on Defendant's person or inside of his home on December 11, 2022 is suppressed.

IT IS SO ORDERED.

| January 22, 2024 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |

---

[5] This case is distinguishable from the Sixth Circuit case *Allen v. City of Ecorse, Michigan*, in which the Court found officers were justified in entering a home under the "hot pursuit" exception after witnessing a crime and pursuing the perpetrator.  No. 21-1268, 2021 WL 5320446 (6th Cir. Nov. 16, 2021).  The Sixth Circuit explained in other cases the hot pursuit exception was not appropriate because "officers did not witness that crime. And their pursuit was not immediate but occurred 'sometime later.'" *Id*. at *2 (citing *Coffey v. Carroll*, 933 F.3d 577, 586 (6th Cir. 2019)).  In *Allen*, however, the officers witnessed the transaction and traffic offenses, and the ensuing flight became a felony as officers pursued the individual.  *Id.*

8